UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

EGYPTIAN NAVIGATION CO.

                Plaintiff,

          - against -

BAKER INVESTMENTS CORPORATION and
BAKER INTERNATIONAL GROUP

                Defendants.

-----------------------------------------------------------X

**ECF CASE**

08 Civ. 02080 (SHS)

## MEMORANDUM OF LAW IN OPPOSITION TO
## ADORA INVESTMENTS INC.'S
## <u>MOTION TO VACATE THE RULE B MARITIME ATTACHMENT</u>

**Law Offices Of Rahul Wanchoo**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866

Of Counsel:

Rahul Wanchoo, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

SUMMARY OF FACTS ................................................................................................. 1

ARUGMENT .................................................................................................................. 3

POINT I ......................................................................................................................... 3
PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER RULE B AND E (4) (f) ..... 3

POINT II ........................................................................................................................ 4

DEFENDANT HAS A COGNIZABLE PROPERTY INTEREST IN THE FUNDS
ATTACHED, NOTWITHSTANDING THE FACT THAT THEY WERE ASSIGNED VIA A
DEED OF ASSIGNMENT ................................................................................................4

A.      In accordance with the decision in Winter Storm, the definition of assets subject to
attachment is broad, and includes debts owed to the party under attachment. ............................... 4

B.      Even under English Law which governs the Assignment, Adora has no legal title to the
attached funds as no notice of assignment has been given to the debtor. ...........................10

C.      The case law cited by Defendant is inapposite and factually distinguishable...............13

CONCLUSION............................................................................................................... 11

### PRELIMINARY STATEMENT

Plaintiff, Egyptian Navigation Co., (hereinafter "ENC" or "Plaintiff"), by and through its undersigned counsel, Law Offices of Rahul Wanchoo respectfully submits this Memorandum of Law and the accompanying Declarations of Rahul Wanchoo (*Wanchoo Decl.)* Laurence Marron (*Marron Decl.*) and Mohamed Shaaban (*Shaaban Decl.*) in Opposition to Adora Investments Inc's (hereinafter "Adora") motion to vacate the maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").  The Second Circuit's decision in *Winter Storm Shipping Ltd. V. TPI, 3*10 F.3d 263 (2d Cir.2002) is controlling and makes clear that Rule B has broad application to all type of property interest, including proceeds of an electronic funds transfer (hereinafter "EFT"). Adora's motion to vacate should be denied because Defendant, Baker Investments Corporation (hereinafter "BIC" or "Defendant") has a discernable property interest in the funds attached and Plaintiff has satisfied the requirements of Rule B in all other respects.

Thus, for the reasons stated herein, the attachment Order should be upheld.

### SUMMARY OF FACTS

By maritime contract of charter dated March 1, 2006, Plaintiff chartered the M.V. DOMIAT ("Vessel") to BIC for a period of six months +/- 15 days at Defendant's option.  The Charter provided that the Vessel was to be loaded in a safe berth and shall not be required to enter or remain in any icebound port or area.  This action stems from Plaintiff's maritime claim that Defendant persisted in ordering the Vessel to St. Petersburg which would be affected by ice at the time of the Vessel's call at the port, an illegitimate order and thus a repudiatory breach by

1

the Defendant (*See Plaintiff's Verified complaint annexed as Exhibit 1 to the Wanchoo Decl.*).

Accordingly, on March 10, 2006 the Charter was terminated.

As a result of Defendant's breach of the aforesaid charter party contract, Plaintiff has

sustained damages in the total principal sum of $128,355.46, as best as can now be estimated,

exclusive of interests, costs and reasonable attorneys' fees. In accordance with the binding

arbitration clause in the charter party contract, the parties submitted their dispute to arbitration in

London. The arbitration proceedings are currently ongoing.

To secure its claim against Defendant, on March 3, 2008 Plaintiff applied for and was

granted an Order of Attachment and accompanying writ pursuant to Rule B in the amount of

$279,230.98 against BIC and Baker International Group (*Wanchoo Decl. Ex.2*). Plaintiff served

the Order and writ of maritime attachment on multiple garnishee banks, including Citibank. On

March 5, 2008 in accordance with the Order and writ, Citibank intercepted an EFT transfer in the

amount of $127,755.79 for the benefit of "Baker Investments Corporation" which was properly

attached (*Wanchoo Decl. Ex. 3*).This wire transfer was a payment made from Louis Dreyfus

Commodities Suisse S.A. ("Louis Dreyfus") to BIC for payment of freight on M.V. DJEBEL

REFAA. The history of the wire transfer as alleged by Adora is detailed below.

In July 2005 Adora entered into an agreement with BIC to loan BIC the amount of

$195,000, with BIC to repay Adora the sum of $300,000 by January 31, 2008. As BIC did not

repay the loan by January 31, 2008, BIC assigned all of its earnings under the charter of the M.V.

DJEBEL REFAA to Adora, pursuant to a Deed of Assignment ("Assignment") dated February

22, 2008. (*See Gallanis Aff., Ex. A*). Coincidentally on the same date that Citibank intercepted

the wire transfer, i.e., March 5, 2008 BIC sent a letter to Louis Dreyfus enclosing a freight

2

invoice in the amount of $127,755.79 instructing the latter to remit the amount of $127,755.79 to the following account (*Lemos Aff., Ex.B*):

> EFG EUROBANK ERGASIAS
> Acc. Name: ADORA INVESTMENTS INC.
> USD Acc No. 0026.0029.23.1200213642
> IBAN: GR 28 0260 0290 0002 3120 0213642
> Swift Code: EFGBGRAA

Adora alleges that Louis Dreyfus mistakenly named BIC as the beneficiary of the wire transfer. However, BIC's letter of March 5, 2008 gives no notice of the assignment to Louis Dreyfus nor does it request Louis Dreyfus to remit the freight payment to Adora. BIC's letter simply states that $127,755.79 should be remitted to EFG Eurobank Ergasias in the account name "Adora Investment Inc. Accordingly, even though Adora alleges an assignment took place no notice of the assignment was provided to Louis Dreyfus. "Baker Investments Corporation" remained the named beneficiary of the wire transfer. If Adora has a direct interest in the funds, it would have been named as beneficiary of the wire transfer. However, this was not the case. *See Wire Transfer Details at Exhibit 3 of the Declaration of Rahul Wanchoo*. Thus, it is clear that BIC retained a discernable property interest in the funds attached, and as all other elements of Rule B have been satisfied, the motion to vacate the attachment should be denied.

## ARUGMENT

### POINT I

### PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER RULE B AND E (4) (f)

"An order of maritime attachment is available where the plaintiff has an in personam claim against the defendant that is cognizable in admiralty, the defendant cannot be found in the district, property of the defendant can be found in the district, and there is no statutory or general

3

maritime law prohibition to the attachment." *Tramp Oil & Marine Limited v. Ocean Navigation (Hellas)*, 2004 U.S. Dist. LEXIS 7974 (S.D.N.Y. May 7, 2004) *citing* 2 Thomas J. Schoenbaum Admiralty and Maritime Law § 21-2, at 470 (2d ed. 1994).

Defendant does not dispute that Plaintiff has a maritime claim. Furthermore, the Defendant cannot be found within the district. As indicated by the affidavit submitted by Rahul Wanchoo in conjunction with the Verified Complaint, a due diligence search was performed and the Defendant had no discernable presence within the district (*Wanchoo Decl. Ex. 4*). As will be shown below, Plaintiff has also attached property of the Defendant in the district and there is no law prohibiting the attachment. Therefore, Plaintiff has satisfied all the elements of Rule B.

## POINT II

### DEFENDANT HAS A COGNIZABLE PROPERTY INTEREST IN THE FUNDS ATTACHED, NOTWITHSTANDING THE FACT THAT THEY WERE ASSIGNED VIA A DEED OF ASSIGNMENT

**A.    In accordance with the decision in Winter Storm, the definition of assets subject to attachment is broad, and includes debts owed to the party under attachment.**

Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim in personam." *Reibor Int'l Limited, 759 F.2d 262* (2d Cir.1985). Quasi in rem process can be used to attach or garnish a wide variety of tangible and intangible property. "Rule B (1) and B (3) refer to goods, chattels, debts, credits and effects. The terms "goods", "chattels", and "effects" have been interpreted to apply to virtually all tangible property....In addition to tangible property, service of quasi in rem process can also be used to reach a variety of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705 Moore's Federal Practice- Civil § 705.04.* A party

4

may attach the funds used to pay a debt that is owed or will be owed to a defendant and the court may require such person to pay the debt to the attaching party upon maturity. *See Iran Express Lines v. Sumatrop, A, G., 563 F.2d 648* (4th Cir. 1977).

In *Winter Storm Shipping v. TPI, 310 F.3d 263* (2d Cir. 2002) the court held that an electronic funds transfer was attachable "property" within the meaning of Rule B. The Second Circuit also held that the definition of what constitutes attachable "property" is remarkably broad. The *Winter Storm* court held as follows:

> "Initially examining admiralty law, as we must, we encounter Rule B (1) itself, which provides that a maritime plaintiff may "attach the defendant's tangible or intangible personal property." It is difficult to imagine words more broadly inclusive than "tangible or intangible". What manner of thing can be neither tangible nor intangible and yet still be "property?"
>
> * * *
>
> Rule B also permits a plaintiff to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured. Of course, the defendant's entitlement to the credit or interest in the debt must be clear.

*Winter Storm Shipping,* 310 F.3d at 276.

Moreover, New York state law reinforces the fact that the definition of property subject to attachment should be defined broadly, and supports a plaintiff's right to attach funds in which a defendant (a.k.a. judgment debtor) retains an economic interest, including monies used to extinguish the debts owed to the Defendant. Under New York State Law, "any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment." NY CPLR § 6202. CPLR 5201 (a) and (b) elaborate further, distinguishing generally between "debt" and "property".

(a)     Debt against which a money judgment may be enforced.  A money judgment may be enforced against any debt, which is past due or which is yet to become within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment.  A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.

(b)     Property against which a money judgment may be enforced.  A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.

N.Y. Civ. Prac. L & R § 5201(a), (b) (McKinney 2001) (hereinafter "PLR 5201"); see also

*Shaklee Corp. v. Loehmann's Inc.,* 629 N.Y.S.2d 766 (1995).

Federal law has adopted New York's broad definition of assets subject to attachment.  In

*Noble Shipping Inc. v. Euro-Maritime Chartering Ltd.,* 2003 U.S. Dist. LEXIS 23008 No. 03

Civ. 039, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003), Judge Cote held that,

Debts owed to a creditor are indisputable property subject to attachment. See e.g. N.Y.C.P.L.R. 5201, 6214 (McKinney 2003).  In maritime actions, it is no different.  Rule B permits "a plaintiff to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured." *Winter Storm,* 310 F.3d at 276 *citing* Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, *20 Mar. L.¶ Com.* 521, 530 (Oct. 1989).

New York courts have interpreted CPLR 5201 to apply to a wide variety of intangible

property interests.  In the seminal case of *ABKCO Ind. V. Apple Films, Inc.,* 39 N.Y. 2d 670

(1976), the New York Court of Appeals in considering the validity of an attachment of

contractual agent to receive funds from a licensing agent, looked to the economic significance of

the interest, reasoning that "while the fact of value or lack of it has no legal effect on the validity

of the attachment, it obviously will have real economic value." *ABCKO,* 39 N.Y.2d. at 675-76.

Though the defendant argued that its contracted rights did not constitute attachable debt under

subsection (1), the court nevertheless held that the contract right constituted intangible property

because it was assignable.  *Id. See also In re Bd. Of Dir. Of Hopewell Int'l Ins. Ltd.,* 283 B.R. 25

6

(Bankr. S.D.N.Y. 1999) (*citing ABCKO,* "[u]nder New York law, the bundle of rights created by a contract or agreement is an intangible personal property interest).

Essentially, "[t]he court said that the right that [defendant] had against [its NY counterpart] could be treated as *either a* "debt" under CPLR 5201(a) *or* as 'property' under 5201(b), and held that the levy would be allowed if it passed under either." Siegel, *New York Practice* § 489 at 751 (3d ed. 1999). The *ABKCO* court emphasized a pragmatic approach to defining an attachable property interest. Under Professor Siegel's view, the *ABCKO* court correctly eschewed a purely technical approach (such as the one Adora urges in this case) by looking at the economic significance of the interest at stake:

> Avoiding arbitrary distinctions, Abkco takes a pragmatic approach that gives the economic potential of the asset the upper hand. If from the judgment creditor's point of view the asset is worth pursuing as a matter of economics, Abkco authorizes the pursuit notwithstanding the contingent nature of the asset, and even though nothing may come of the chase.

*McKinney's Cons. Laws of N.Y.,* Book 7B, CPLR 5201.5 at 54. Professor Siegel concludes that by virtue of the *ABCKO* decision, "as long as a New York situs can be spelled out for the intangible at issue, it can be given 'property' treatment under CPLR 5201(b) and subjected to levy." Siegel, *New York Practice* § 489 at 794-95 (3d ed. 1999).

In interpreting the expansive scope of the *ABKCO* decision, New York courts frequently rely on Professor Siegel's commentary as reliable and persuasive. *See Digitrex, Inc. v. J. Howard Johnson,* 491 F. Supp. 66, 68-69 (S.D.N.Y. 1980); *Trojan Hardware Co. v. Bonacquisti Constr. Corp.,* 141 A.D.2d 278, 282, 534 N.Y.S.2d 789, 791 (N.Y. App. Div. 1998); *Niagara Mohawk Power Corp. v. Young,* 135 A.D. 2d 1139, 53 N.Y.S.2d 275, 277 (N.Y. App. Div. 1987*); Supreme Merchandise Co. v. Chemical Bank,* 117 A.D. 2d 424, 429-430 503 N.Y.S.2d 9, 12 (N.Y. App. Div. 1986*); Kates v. Marine Midland Bank, N.A.,* 143 Misc.2d 721, 723, 541

7

N.Y.S.2d 925, 928 (Sup. Ct. Monroe Co. 1989); *and Streever v. Mazzone,* 97 Misc.2d 465, 471, 411 N.Y.S.2d 843, 848 (Sup. Ct. Saratoga Co. 1978).

The attached funds were of obvious economic significance to BIC at the time of the attachment (despite its allegations that the funds are solely Adora's property). As a result, such funds are attachable property under federal maritime law as set out in *Winter Storm,* and under New York state law as enumerated in *ABKCO.* Applying the *ABKCO* decision to the facts of this case leads to the conclusion that under New York law the funds held by Citibank at the time it received the wire transfer payment order clearly fall within the gamut of CPLR 5201 as attachable property interests. The wire transfer and the proceeds thereof in Citibank's possession were economically significant to BIC at the time of the attachment. See *ABKCO*, 39 N.Y.2d. at 675-76, 50 N.E.2d at 902, 385 N.Y.S.2d at 514 (holding an interest is attachable even though real economic significance of interest "may not come into sharp focus until execution on the judgment, if any, in the action for which the attachment provides jurisdiction"). On the other hand, vacating this attachment would thereby deprive ENC of its right to security to ensure satisfaction of the London arbitration award. (*See Shaaban Decl. ¶¶ 3-4*).

In addition, BIC's interest in the wire transfer funds attached at Citibank is irrefutable since *BIC was the named beneficiary on the EFT.* Not only was BIC the named beneficiary on the wire transfer, but BIC's interest in the attached funds is revealed by the fact that Louis Dreyfus remitted the freight payment in order to discharge a debt to BIC. Louis Dreyfus was indebted to BIC until the proceeds of the wire transfer were credited to the account in the name of Adora at EFG Eurobank Ergasias. However, the funds never reached Adora as they were intercepted at Citibank, and BIC's interest in the funds was not extinguished. Moreover, at all times, the purpose of remitting the funds was to extinguish Louis Dreyfus' debt to BIC. Debts

8

owed to a defendant are attachable, and for this reason, Louis Dreyfus' remittance to extinguish its debt to BIC is properly attached.

**B.    Even under English Law which governs the Assignment, Adora has no legal title to the attached funds as no notice of assignment has been given to the debtor.**

BIC's assignment all of its earnings under the charter of the M.V. DJEBEL REFAA to Adora provides that it shall be "governed by and construed in accordance with the law of England." *See Deed of Assignment, Exhibit A to the Affirmation of Phillipos Gallanis.* BIC claims that since it irrevocably assigned all of its earnings under its charter of the M.V. DJEBEL REFAA to Adora about two weeks prior to the attachment, it relinquished all property rights to the funds being held under attachment. However, as stated by Mr. Laurence Marron, an English solicitor in his unsworn Declaration under penalties of perjury "one of the conditions which must be satisfied in order to complete the title of one who claims to be a statutory assignee pursuant to the statute (which [Adora] appears to be seeking to be) is that written notice of the assignment has been given to the debtor." (*Marron Decl. ¶ 15.*) Mr. Marron goes on to state:

> From the papers I have read, I have seen no document which satisfies these English law requirements of a notice of assignment to Louis Dreyfus. . . I do not believe the letter from BIC of 5 March 2008 constitutes a valid notice of assignment – in fact there is no mention of the word "assignment" in that communication."

*Id. at ¶8 (emphasis added)*

Thus, even under English law it does not follow that the funds are not attachable property.

**C. The case law cited by Defendant is inapposite and factually distinguishable.**

The case law cited by Adora stands for the limited proposition that once a party has given the assignment, it has no right to challenge the attachment since it has no property right in the

9

assigned property. *See Chubb & Son, Inc. v. Kelleher, 2007 U.S. Dist. LEXIS 71607 (E.D.N.Y. 2007) (NOT FOR PUBLICATION).* Adora has not shown, and cannot show that anyone but BIC ever had a security interest in the funds under attachment. That is, Adora's security interest never vested because BIC's interest in the funds are never divested. If Adora has a direct interest in the funds, it would have been named as beneficiary of the wire transfer. Adora argues that the alleged accidental naming of BIC as a beneficiary does not alter the fact that BIC has no legal interest in the funds. However, it has not cited any authority in support of this argument. The fact remains that when Citibank intercepted the funds, "Baker Investments Corporation" was the named beneficiary of the wire transfer and has a discernable property interest in the funds attached.

The cases cited by Adora that a plaintiff cannot maintain an attachment of a third-party's funds where the third-party was not named as a defendant also do not address the factual scenario in this case. In *DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. 2006)*, Plaintiff attached the funds of a third-party, Universal Cargo Lines ("Universal") located in Universal's bank account in the district. Universal had not been named as a defendant in the complaint and neither the complaint nor the accompanying affidavit declared that Universal cannot be "found within the district", a prerequisite to obtaining an attachment pursuant to Rule B. As the attachment failed to either obtain jurisdiction over the defendant or assure satisfaction of any judgment in plaintiff's favor, the two purposes of maritime attachment, this Court vacated the process of maritime attachment to the extent it sought property belonging to Universal. *Id. at \*6-7.* No such facts are present in the instant case. Here, Plaintiff has a maritime claim against Defendant BIC which is named as a party defendant in the Verified Complaint. Furthermore, BIC is a named beneficiary of the wire transfer and has

10

retained a discernable property interest in the funds attached. Thus, the attachment order satisfies the two purposes of maritime attachment, namely "to obtain jurisdiction of the respondent in personam through his property [and] to assure satisfaction of any decree in libelant's favor." *Id.*

Similarly, in *T & O Shipping Ltd. v. Source Link Co. Ltd., 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006)*, plaintiff attached the funds of Source Link Shipping which was not named in the verified complaint. However, in that case the court held that plaintiff's alter ego allegations were sufficient to support plaintiff's application to amend the verified complaint to include Source Link Shipping as a defendant. Once again, that case is distinguishable from the facts of the present case where the party whose funds have been attached, namely BIC is named in the Verified Complaint.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that this Court deny Adora Investments Inc.'s motion in all respects and grant Plaintiff all other relief that the Court deems necessary and/or appropriate.

Dated: New York, New York
      March 21, 2008

                           Respectfully submitted,

                           **LAW OFFICES OF RAHUL WANCHOO**
                           Attorneys for Plaintiff
                           EGYPTIAN NAVIGATION CO.

                           By:  *Rahul Wanchoo*
                                 Rahul Wanchoo (RW-8725)

LYONS & FLOOD, LLP
Attorneys for ADORA INVESTMENTS INC.
65 West 36th Street, 7th Floor
New York, New York 10018
Attn: Kirk M. Lyons, Esq.

11