UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EGYPTIAN NAVIGATION CO.,

                            Plaintiff,

- against -

BAKER INVESTMENTS CORPORATION and
BAKER INTERNATIONAL GROUP,

                            Defendants.
------------------------------------------------------------------X

**ECF CASE**

08 Civ. 02080 (SHS)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## INTERESTED PARTY ADORA INVESTMENTS INC.'s
## MOTION TO VACATE THE RULE B MARITIME ATTACHMENT

Of Counsel:

Kirk M. Lyons
Jon Werner

**Lyons & Flood, LLP**
Attorneys for Interested Party
ADORA INVESTMENTS INC.
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

## Introduction

Interested party Adora Investments Inc. ("Adora") respectfully submits this Reply Memorandum of Law in further support of its motion to vacate the Ex Parte Order for issuance of process of maritime attachment and garnishment ("Attachment Order") issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B") to the extent of the property currently under attachment at Citibank. Adora's motion is further supported by the Declaration of Benjamin John Horn dated March 25, 2008 ("Horn Decl."), to which the Court is respectfully referred.

The issue for decision by the Court is a narrow one. It is not whether the electronic funds transfer ("EFT") restrained by Citibank on March 5, 2008, is "tangible or intangible personal property" within the meaning of Rule B. Rather, the issue is whether the EFT restrained by Citibank on March 5 was the property of defendants. For the reasons set forth in Adora's initial Memorandum of Law in Support of the Motion to Vacate and in this Reply Memorandum of Law, the answer is clear cut. At the time the EFT was restrained by Citibank on March 5, it was the property of Adora and not the defendants. As such, the attachment of the EFT should be vacated for the reason that it was not defendants' property.

## ARGUMENT

### POINT I

### PLAINTIFF HAS FAILED TO MEET ITS BURDENS UNDER AQUA STOLI

At the outset it should be noted that plaintiff Egyptian Navigation Co. ("Egyptian") is mistaken in referring to Adora as "defendant" in its opposition papers, as Adora is not a

defendant in this action, but is simply an interested party whose funds have been attached. Egyptian does not have any cause of action against Adora, and thus, Egyptian's recitation of the factual background behind its dispute with Baker Investments Corporation ("BIC") and claimed need for security from BIC are wholly irrelevant to this motion.[1]

Moreover, it is Egyptian's affirmative obligation on a motion to vacate the attachment under Rule E(4)(f) to show that "defendant's property may be found with the district." Aqua Stoli, supra, 460 F.3d at 445. Plaintiff has failed to show that the EFT restrained by Citibank on March 5 was the property of defendants. Rather, it was the property of Adora. As a result, the attachment of the EFT restrained by Citibank should be vacated.

## POINT II

### THE DEFENDANTS DO NOT HAVE ANY PROPERTY INTEREST IN THE ATTACHED EFT

The central premise of Egyptian's opposition papers appears to be that BIC continued to have an attachable interest in the EFT sent by Louis Dreyfus and restrained by Citibank on March 5, 2008, even after the Deed of Assignment ("Assignment") was entered into between BIC and Adora on February 22, 2008. As will be explained below, this position has no merit.

a. **Plaintiff Has Raised an Immaterial Choice of Law Issue**

Egyptian challenges the efficacy of the Assignment by relying on the English law of assignments. It does so since the Deed of Assignment provides that it is governed by English law. (See Egyptian's Memo. at p. 9).

---

[1] Indeed, under the Second Circuit's decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 446 (2nd Cir. 2006), the alleged need for security is not a factor that should be considered by the Court in deciding whether to vacate an attachment.

However, the issue of what law the Court should apply in determining whether the EFT was BIC's property at the time it was restrained by Citibank is in reality immaterial. Whether Federal maritime law or English law applies, the Assignment effectively divested BIC of any property rights to the EFT.

### b.  The Effect of the Assignment under Federal Maritime Law

As Adora explained in its original Memorandum of Law, under New York State law [2] a party who makes a complete assignment loses any right to challenge an attachment of the assigned property, since post-assignment it no longer has any rights or interest in the assigned property. See, e.g., Ull v. Lerner, 308 A.D.2d 396, 764 N.Y.S.2d 432 (1st Dep't 2003) (recognizing "[i]t is well established that a general, unqualified assignment of one's rights, title and interest in a lease divests the assignor [BIC] of all rights existing thereunder"); Singer v. Boychuk, 194 A.D.2d 1049, 1051, 599 N.Y.S.2d 680 (3rd Dep't 1993); Olive Branch Investors Corp. v. Moore, 2001 N.Y. Misc. LEXIS 1301 (Sup. Ct. Nassau Co. 2001) (holding that an "unqualified assignment transfers to the assignee [Adora] all the rights, title and interest possessed by the assignor [BIC]" and that the "assignor [BIC] has no remaining power over or interest in the subject of the assignment."); Slip-N-Slide Records, Inc., v. TVT Records LLC, 2007 U.S. Dist. LEXIS 80787, at *14 (S.D. Fl. 2007) (finding that unqualified assignments transfer "to the assignee [Adora] all the interest of the assignor [BIC] under the assigned contract, and the assignor [BIC] has no right to make any claim on the contract once the assignment is complete, '*unless authorized to do so by the assignee*'") (emphasis in original). See also Chubb

---

[2] "...[W]hile Federal law generally governs questions as to the validity of Rule B attachments,., state law may be borrowed if there is no federal admiralty law in point on the particular question presented." Winter Storm Shipping Ltd.v. TPI, 310 F.2d 263, 275 (2nd Cir. 2002) (citing to Reibor International Ltd. v. Cargo Carriers (KACZ-CO.) Ltd., 759 F.2d 262, 265 (2nd Cir. 1985). Adora submits there is no controlling Federal maritime law on the issue of the efficacy of an assignment in the context of a challenge to a Rule B attachment.

& Son, Inc. v. Kelleher, 2007 U.S. Dist. LEXIS 71607 (E.D.N.Y. 2007); Maxus Leasing Group, Inc. v. Kobelco America, Inc., 2007 U.S. Dist. LEXIS 13312 (S.D.N.Y. 2007).

Moreover, the treatises and commentators on contract law share this view as well. See, e.g., RESTATEMENT (SECOND) OF CONTRACTS § 331 (1981), Comment (a) ("On proof of an unconditional assignment, the assignee [Adora] can recover on an assigned right; the assignor [BIC] cannot."); RESTATEMENT (SECOND) OF CONTRACTS § 341 (1981), Comment (a) ("An effective assignment extinguishes the assignor's [BIC's] right without any notification to the obligor [Louis Dreyfus]" and "[a] creditor of the assignor [BIC] who claims the assigned right by garnishment, levy of execution or like process is not a bona fide purchaser, even though he has no notice of the assignment.").

In fact, as CORBIN ON CONTRACTS explains:

> When a dispute is between an assignee [Adora] and an attaching creditor of the assignor [Egyptian], each party has a right in the same chose in action and it is quite generally held that the one first in point of time has the better right. The assignee [Adora], however, has the greater equity because he gave value to the assignor [BIC] in reliance on the particular claim, while the attaching creditor [Egyptian] relied on the general credit of the assignor [BIC]. Thus, where the assignment occurred before the judicial lien, the assignee [Adora] prevails **regardless of whether he gave notice to the obligor [Louis Dreyfus].**

9 CORBIN ON CONTRACTS, § 51.12 (emphasis added).

Thus, on February 22, 2008, when BIC assigned the Louis Dreyfus payment (as well as other future freight payments) to Adora, BIC lost any rights it had to that payment, and had Louis Dreyfus failed to make the payment, BIC would not have had standing to sue Louis Dreyfus since BIC had no interest in the debt. This result obtains regardless of whether notice of the Assignment was given to Louis Dreyfus.

There is no dispute that the Assignment was given on February 22, 2008, several days before the EFT sent by Louis Dreyfus was restrained by Citibank on March 5, 2008. Since BIC would not have standing to sue Louis Dreyfus after the Assignment, it logically follows that BIC cannot be found to have had an attachable interest in the property after the Assignment. Thus, it is clear that the EFT restrained by Citibank was not the "property" of defendant BIC at the time of the attachment. The attachment of the EFT by Citibank should therefore be vacated as the EFT is the property of Adora, the assignee of the freight paid by Louis Dreyfus.

    c.    **The Effect of the Assignment under English law**

Egyptian argues that under English law, the Assignment was an ineffective assignment of the Louis Dreyfus debt to Adora, since sufficient notice of the assignment from BIC to Adora was not provided to Louis Dreyfus in advance of the EFT. Specifically, Egyptian's English solicitor, Laurence Marron, contends that the March 5, 2008, freight invoice sent by BIC to Louis Dreyfus was not sufficient notice to render the assignment effective.

However, as Adora's English solicitor, Mr. Horn explains in his Declaration, such notices need not be a formal writing, and need not contain the word 'assignment.' (See Horn Decl. at ¶¶ 5-6). Thus, Mr. Horn concludes that the March 5, 2008, freight invoice that BIC sent to Louis Dreyfus could constitute sufficient notice of the Assignment under English law for it to be effective. (See Horn Decl. at ¶ 8).

Moreover, even in the absence of any notice, the Assignment between BIC and Adora would be enforceable as an equitable assignment, since "the agreement between [Adora] and BIC dated 22nd February 2008 clearly constitutes a valid equitable assignment." (See Horn Decl. at ¶¶ 10-11). The effect of an equitable assignment "is that it passes title to the assigned property to the assignee and the right to sue for its recovery." (See Horn Decl. at ¶ 13). As Mr. Horn

-5-

explains, under an equitable assignment "[n]otice to the person owing the debt is not necessary to complete the assignees title and its relevance is limited to the issue of priorities between assignees." (See Horn Decl. at ¶ 13).[3]

Thus, regardless of whether the notice was "sufficient," Mr. Horn concludes that under English law, "the freight payment from Louis Dreyfus which is the subject of this Rule B would be viewed as belonging to [Adora], and not capable of attachment to secure claims against BIC." (See Horn Decl. at ¶ 15).

As can be seen, the effect of the Assignment under Federal maritime law and English law is the same. At the time of the attachment, the EFT was the "property" of Adora and not of BIC.

### d.  Plaintiff's Remaining Arguments Have No Merit

In addition to challenging the effect of the Assignment, Egyptian raised a number of other arguments as to why BIC had an attachable property interest in the EFT, all of which are as readily dispelled.

Several pages of Egyptian's Memorandum of Law are dedicated to arguing that a debt owed to a defendant by a third-party is property that is properly subject to attachment under Rule B. (See Egyptian's Memo. at pp. 4-8). It is important to note that none of the cases upon which Egyptian relies involved assignments.

Adora concedes that debts in general are attachable, but notes that such debts are attachable only when they are the property of a named defendant. Here BIC's Assignment of the debt on February 22, 2008, stripped away any rights and interest BIC had in the debt and thus,

---

[3] It should be noted that under U.S. law the same result would be obtained. See WILLISTON ON CONTRACTS, § 74:1 (4th Ed. 2003) (discussing equitable assignments).

the debt owed by Louis Dreyfus was Adora's property and not BIC's property, rendering it property that was not properly attachable. (See POINT II (b) & (c) above).

Egyptian further argues that "[t]he attached funds were of obvious economic significance to BIC at the time of the attachment" and that therefore, BIC had an attachable property interest in the funds. (See Egyptian's Memo. at p. 8). There is no basis whatsoever for the illogical leap that Egyptian makes here. It is unclear precisely what Egyptian means by making this conclusory statement, but in any case, whatever "significance" the EFT had to BIC is entirely immaterial to the issue of whether BIC has a property interest in the EFT.

Similarly, Egyptian's assertion that "BIC's interest in the wire transfer funds attached at Citibank is irrefutable since BIC *was the named beneficiary on the EFT*" is equally unavailing. (See Egyptian's Memo. at p. 8). Obviously, property interests in an EFT cannot be created through clerical errors made by the obligor, Louis Dreyfus. The fact that a clerk at Louis Dreyfus made a typographical error in preparing the EFT instructions by incorrectly inserting BIC's name as the beneficiary does not create any rights in BIC to the property in of itself. This is especially so where the actual banking details given by BIC to Louis Dreyfus were for Adora's account – and not BIC's. (See the Affirmation of Phillipos Gallanis dated March 14, 2008, at ¶ 8). If the EFT had not been restrained, it would have been received by Adora, not BIC.

Egyptian next argues that Louis Dreyfus's debt owed to BIC would not be discharged until the proceeds of the EFT were credited to Adora's account, and that since the funds never reached Adora, BIC's interest in the EFT was not extinguished. (See Egyptian's Memo. at p. 8). However, this argument is fatally flawed since it completely ignores the fact that several weeks prior to the remittance of the EFT, BIC had unequivocally assigned all its rights to the Louis Dreyfus payment to Adora. It is clear under the relevant law of assignments that the only

obligation Louis Dreyfus owed was to Adora, and not to BIC, and that in any event, BIC lost any interest it might have had in the payment represented by the EFT on February 22, 2008, when it assigned the freight payment and therefore the debt to Adora. (See POINT II (b) & (c) above).

## **CONCLUSION**

Adora respectfully requests that this Court grant its motion to vacate the Attachment Order to the extent of the EFT currently under attachment at Citibank, Order the release of the attached funds, and grant Adora such other and further relief as the Court sees fit.

Dated: March 26, 2008

>
> LYONS & FLOOD, LLP
> Attorneys for Interested Party
> ADORA INVESTMENTS INC.
>
> By: _/s/ Kirk M. Lyons_
> Kirk M. Lyons (KL-1568)
> 65 West 36th Street, 7th Floor
> New York, New York 10018
> (212) 594-2400

U:\kmhldocs\2651002\Motions\MOL-Vacate-Reply.doc

## CERTIFICATE OF SERVICE

Kirk M. Lyons, an attorney duly admitted to practice before this Honorable Court, affirms on this 26th day of March 2008, I served true copies of the foregoing, by e-mail and ECF notice to:

LAW OFFICES OF RAHUL WANCHOO
Attorneys for Plaintiff
350 Fifth Avenue, 59th Floor
New York, NY 10118

Attn:   Rahul Wanchoo, Esq.
         rwanchoo@wanchoolaw.com

_____
Kirk M. Lyons

U:\kmhldocs\2651002\Motions\MOL-Vacate-Reply.doc