UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EGYPTIAN NAVIGATION CO.,                      :     08-Civ-2080 (SHS)
                                              :
                    Plaintiff,                :
                                              :     OPINION AND
                                              :     ORDER
          -against-                           :
                                              :
BAKER INVESTMENTS CORPORATION and             :
BAKER INTERNATIONAL GROUP,                    :
                                              :
                    Defendants.               :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Non-party Adora Investments Inc. has moved to vacate a maritime attachment that plaintiff Egyptian Navigation Co. had obtained against defendants Baker Investments Corporation ("Baker") and Baker International Group to the extent that certain property was attached. That property consisted of funds in a New York bank that were being routed via Electronic Funds Transfer ("EFT") to a bank account in Greece. Because the company initiating the EFT had named Baker as the beneficiary of the transaction, the funds appeared to belong to Baker and therefore appeared to be subject to the attachment. The funds were therefore restrained in New York. However, the designation of Baker as the beneficiary was a clerical mistake, the EFT was in fact intended to benefit Adora, and the EFT was actually routed to a bank account controlled by Adora and not by Baker. Further, Baker had no interest in the funds because it had previously assigned to Adora all rights to the payment. Under these circumstances, Egyptian has failed to carry its burden of showing that the attachment was proper pursuant to Rule B of the

1

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Admiralty Rules"). Accordingly, Adora's motion is granted.

I.  BACKGROUND

According to the complaint, on March 1, 2006, Baker, a Greek corporation, chartered the M/V Domiat (the "Vessel") from Egyptian under a time charter party. (Compl. ¶¶ 2, 5.) Soon thereafter, Baker attempted to order the Vessel to an icebound port in violation of the charter party and over Egyptian's protests. (Id. ¶ 7.) Baker also allegedly refused to pay certain up-front costs and other amounts due under the charter. (Id. ¶¶ 7-9.) On March 10, 2006, the charter was terminated, and Egyptian subsequently initiated arbitration proceedings in London. (Id. ¶¶ 8-9.) The complaint alleges that Baker International Group is both the holding parent and alter ego of Baker. (Id. ¶¶ 17, 19.)

Egyptian commenced this lawsuit on March 3, 2008 and sought an ex parte order for process of maritime attachment pursuant to Rule B of the Admiralty Rules. After determining that the conditions for a Rule B attachment existed as set forth in Egyptian's papers, this Court entered an order authorizing process of maritime attachment against property "belonging to, claimed by or being held for the Defendants . . . in an amount up to and including $279,230.98."

Egyptian then served the attachment on various garnishee banks and was rewarded on March 5, 2008 when Citibank notified Egyptian that it had intercepted and restrained an EFT in the amount of $127,755.79 "for the benefit of Baker Investments Corporation." (Email from Mary Mihalik to Rahul Wanchoo dated March 5, 2008, Ex. 3

to Decl. of Rahul Wanchoo dated March 21, 2008 ("Wanchoo Decl.").) Adora claims in this motion that the restrained funds belonged to it rather than to Baker.

The EFT at issue was initiated by Louis Dreyfus Commodities Suisse S.A., a non-party to this action that had prior independent dealings with Baker. Specifically, Louis Dreyfus sub-chartered a vessel from Baker in February 2008 and was required to make freight payments to Baker under the sub-charter. (Affirmation of Antonis Lemos dated March 14, 2008 ("Lemos Aff.") ¶ 3.) On March 5, 2008, Baker sent a freight invoice to Louis Dreyfus requesting payment of $127,755.79 due under the sub-charter. (Lemos Aff. ¶ 5.) In a cover letter accompanying the invoice, Baker stated,

> [w]e would appreciate if you could remit the [funds] to the following account:
>
> EFG EUROBANK ERGASIAS
> Acc. Name: ADORA INVESTMENTS INC.

(Letter from Baker to Louis Dreyfus Ref: M/V Djebel Refaa CP DD 20/02/2008 dated March 5, 2008, Ex. B to Lemos Aff.)

Baker requested that Louis Dreyfus remit payment to Adora rather than to itself because Baker had previously assigned its rights under the Louis Dreyfus sub-charter to Adora in satisfaction of a prior debt. (Lemos Aff. ¶ 4; Affirmation of Phillipos Gallanis dated March 14, 2008 ("Gallanis Aff.") ¶ 5; Deed of Assignment dated February 22, 2008, Ex. A to Gallanis Aff.) Specifically, in 2005 and 2006, Adora had loaned Baker $195,000 that was to be repaid with interest by January 31, 2008. (Gallanis Aff. ¶¶ 3-4.) Baker did not pay any part of its debt by the January 31, 2008 deadline. (Id. ¶ 4; Lemos Aff ¶ 4.) As a result, on February 22, 2008 Adora and Baker entered into a Deed of Assignment that stated in relevant part:

3

> The Assignor [Baker] hereby assigns to the Assignee [Adora] with full title guarantee irrevocably and absolutely
>
> . . .
>
> the sub freights (Earnings) from the sub charter of the vessel Djebel Reffaa to Louis Dreyfus estimated to be in the sum of USD 120,000
>
> . . .
>
> [Baker] shall direct that the Earnings shall be paid to . . . Adora Investments Inc
>
> . . .
>
> This deed and any disputes or claims arising out of or in connection with its subject matter are governed by and construed in accordance with the law of England.

(Deed of Assignment dated February 22, 2008, Ex. A to Gallanis Aff.)

As noted above, consistent with the assignment, Baker's March 5, 2008 freight invoice requested that Louis Dreyfus pay the amount due directly to Adora. The record reveals, however, that Louis Dreyfus did not remit its freight payment in precisely the manner requested by Baker. As requested in Baker's letter, Louis Dreyfus instructed its own bank to transfer $127,755.79 to an account owned by Adora. (UBS KeyLink Cash Payment Confirmation dated March 5, 2008, Ex. B to Gallanis Aff; Gallanis Aff. ¶ 8; Lemos Aff. ¶ 6.) However, rather than identifying the recipient of its EFT as Adora, Louis Dreyfus named Baker's Branch Office in Piraeus, Greece, as beneficiary of the transfer. Adora characterizes this as a clerical mistake, (Gallanis Aff. ¶ 8; Lemos Aff. ¶ 6), and nothing in the record suggests otherwise. Indeed, Adora has presented evidence that within one day, Louis Dreyfus attempted to correct the EFT instructions by sending a message through its bank that the "beneficiary name should be ADORA

4

INVESTMENTS INC instead of BAKER INVESTMENT CORPORATION." (Lemos Aff. ¶ 6; UBS KeyLink Outgoing Message Detail dated March 6, 2008, Ex. D to Lemos Aff.)  Adora has presented uncontested evidence that it is a wholly separate entity from Baker and has "no connection whatsoever" with Baker aside from the transactions giving rise to the prior existing debt and the subsequent assignment of Baker's rights under the Louis Dreyfus sub-charter.  (Glannis Aff. ¶ 10.)  On March 27, 2008, the Court heard oral argument on Adora's motion to vacate.

## II.  DISCUSSION

### A.  Standards on Motion to Vacate a Maritime Attachment

To obtain a maritime attachment, a plaintiff must comply with Rule B, which states:

> (a)  If a defendant is not found within the district . . . , a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.
>
> (b)  . . . The court must review the complaint and affidavit [stating that the defendant cannot be found within the district] and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.

Admiralty Rule B(1).

Admiralty Rule E(4)(f) affords any person claiming an interest in property that has been attached pursuant to Rule B an opportunity to contest the attachment.  Upon such a request, the plaintiff bears the burden of showing that the attachment should not be vacated.  Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., No. 06-cv-13765, 2007 WL 1002265, at *3 (S.D.N.Y. Apr. 4, 2007).  To avoid vacatur, the plaintiff must show that: "1) it has a valid prima facie admiralty claim against the defendant;

5

2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

The sole issue upon this motion to vacate the attachment is whether plaintiff has carried its burden of demonstrating that the funds restrained by Citibank are the "defendant's . . . personal property," rather than the property of non-party Adora. Rule B(1)(a). If the funds are indeed Adora's property and not Baker's, then the Court must vacate the attachment. T&O Shipping, Ltd. v. Source Link Co., Ltd., No. 06-cv-7724, 2006 WL 3513638, at *13-14 (S.D.N.Y. Dec. 6, 2006); DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., No. 05-cv-10146, 2006 WL 1643110 (S.D.N.Y. June 13, 2006).

The EFT restrained by Citibank consisted of payment for freight charges remitted by Louis Dreyfus pursuant to a sub-charter. As a general matter, the types of property interests subject to attachment are defined broadly and include debts owed to a defendant. See, e.g., Winter Storm Shipping , Ltd. v. TPI, 310 F.3d 263, 276 (2d Cir. 2002). However, as the parties acknowledged during oral argument, if Baker had effectively assigned its rights under the sub-charter to Adora before the EFT was initiated, then the EFT was not Baker's property and the attachment must be vacated. The parties also agreed at oral argument that whether Baker had effectively assigned its rights to Adora was a question to be decided under English law, as called for in the Deed of Assignment. The Court now turns to this question.

6

B.  The Property Belongs to Adora, not Baker

Not surprisingly, the English solicitors retained separately by Egyptian and Adora disagree as to whether Baker effectively assigned its rights under the sub-charter to Adora. In his declaration on behalf of Egyptian, solicitor Laurence Marron opines that pursuant to section 136 of the English Law of Property Act of 1925 ("Property Act"), the assignment of a debt owed to an assignor is ineffective unless express written notice of the assignment is given to the debtor. (Declaration of Laurence Marron dated March 21, 2008 ("Marron Decl.") ¶¶ 5-6.) Without citation to authority, Mr. Marron continues, "under English law, the essential requirements in all notices of assignment are that the notice must be clear and unambiguous and expressly or implicitly record the fact of an assignment and must clearly indicate to the debtor that by virtue of the assignment, the assignee is entitled to receive the money." (Id. ¶ 7.) He concludes that nothing in this record demonstrates that Louis Dreyfus was given sufficient notice of the purported assignment. (Id. ¶ 8.)

Specifically, Mr. Marron believes that the March 5, 2008 letter from Baker to Louis Dreyfus was not a valid notice of assignment because "there is no mention of the word 'assignment' in that communication. Rather, that letter . . . was simply an instruction for payment, not a notice of assignment, and as such would not satisfy the requirements of s136 of the statute for the purposes of transferring legal title to the funds." (Id.)

For its part, Adora submits the declaration of solicitor Benjamin Horn, who agrees that a debtor must be given notice in order for a statutory assignment of the debt to be effective, but opines that "[t]he relevant notice . . . need not be formal . . . and need not be

7

written with the intention that it should perform the function of giving notice." (Declaration of Benjamin Horn dated March 25, 2008 ("Horn Decl.") ¶ 5.) Citing Denney, Gasquet, & Metcalfe v. Conklin, (1913) 3 K.B. 177, and Van Lynn Devs. Ltd v. Pelias Const. Co. Ltd, (1969) 1 Q.B. 607, Mr. Horn argues that the March 5, 2008 letter gave Louis Dreyfus sufficient notice. (Horn Decl. ¶¶ 5-8.)

In the alternative, Mr. Horn states that even if the requirements of the Property Act were not met, on the facts of the case Adora was an equitable assignee of Baker's rights under the sub-charter. (Id. ¶¶ 10-15.) He asserts that in the case of an equitable assignment, no notice need be given to the debtor for the assignment to be valid and to prevent a third party from claiming any interest in the debt through the assignor. (Id. ¶ 13-14 (citing Holt v. Heatherfield Trust, (1942) 2 K.B. 1, and United Bank of Kuwait v. Sahib, (1995) 2 All E.R. 973).) On behalf of Egyptian, Mr. Marron does not dispute that equitable assignments are effective against third parties in Egyptian's position even without notice to the debtor, but simply states that he possesses "insufficient papers to be able to come to any firm conclusion" as to whether an equitable assignment occurred in this case. (Marron Decl. ¶ 9.) The Court finds that Adora has the stronger argument on both points.

       1.    *Statutory Assignment*

Under English law, in order for a statutory assignment to be valid (1) it must be absolute, (2) it must be in writing under the hand of the assignor, and (3) express notice in writing must be given to the debtor. Property Act § 136; Chitty on Contracts § 19-007 (29th ed. 2004) ("Chitty"). There is no dispute that the Deed of Assignment executed by Baker and Adora meets the first two elements.

As to the third element, other than the necessity of a writing, there are "no formal requirements . . . for a notice of assignment." Van Lynn Developments, (1969) 1 Q.B. 607, 613 (opinion of Lord Denning M.R.). English courts have found sufficient notice where an assignee requested that a debtor account for his dealings with the assignor for the stated reason that "there appears from [the assignor's] books to be a considerable debt due from you to him for money advanced." Denney, Gasquet, & Metcalfe, (1913) 3 K.B. 177, 178. Despite the fact that this communication referenced a debt owed from the debtor *to the assignor* and so would seem unlikely to notify the debtor that his debt was actually owed to the assignee, the English court found sufficient notice. Id. at 180-81.

As Mr. Horn candidly acknowledges, there is no English case directly holding notice sufficient under the statute where, as here, a creditor, who has previously executed an assignment, requests that his debtor pay the assignee without explicitly mentioning the fact of assignment. (Horn Decl. ¶ 8.) Nevertheless, the Court is persuaded by Mr. Horn's reasoning that if confronted with the facts of this case, an English court would so hold because "the 5th March letter"—which accompanied Baker's invoice to Louis Dreyfus—"gave notice that [Baker] wished someone other than [itself] to be paid which is consistent with the existence of an assignment and even instructed that the beneficiary should be [Adora] and not [Baker]." (Id.)

In addition, Egyptian bears the burden of demonstrating that the requirements of Rule B are satisfied. Its argument that the March 5, 2008 letter did not constitute valid notice of assignment because "there is no mention of the word 'assignment' in that communication," (Marron Decl. ¶ 8), is unpersuasive. See Denney, Gasquet & Metcalfe, (1913) 3 K.B. 177, 178, 180 (holding notice sufficient where the word "assignment" was

9

absent from the communication). Because the March 5, 2008 letter gave Louis Dreyfus sufficient notice that Baker's interest in the freight payment had been transferred to Adora, the assignment appears to be effective pursuant to the Property Act. Therefore, Egyptian has not met its burden of demonstrating that the restrained EFT was Baker's property and the attachment should be vacated.

2.   *Equitable Assignment*

Alternatively, regardless of whether the March 5 letter gave sufficient notice to render the assignment effective under the Property Act, Baker retained no interest in the freight payment because Adora was an equitable assignee of Baker's interest. An equitable assignment occurs under English law when an assignor, with an intent to transfer his right to a chose in action, informs the assignee that the right is so transferred. Chitty § 19-021; Phelps v. Spon-Smith & Co., (2001) B.P.I.R. 326 ¶ 36 ("It is not necessary for an equitable assignment to follow any particular form, but it is essential that there should be an intention to assign and . . . some act by the assignor showing that he is passing the chose in action to the supposed assignee."). In this case, the Deed of Assignment clearly evinces an intent on the part of Baker to transfer its interest in freight payments under the Louis Dreyfus sub-charter to Adora. Although notice to the debtor that an assignment has occurred is desirable from the assignee's point of view for several reasons,[1] it is not a requirement of an equitable assignment, which is effective to cut off

---

[1] For example, if notice is not given to the debtor, he is entitled to continue treating the assignor as his creditor and to discharge his debt by paying the assignor rather than the assignee. (See Marron Decl. ¶ 9 ("[T]he failure to give notice of the assignment to Louis Dreyfus would seriously prejudice the title of [Adora], as equitable assignee, since . . . an equitable assignee is bound by any payment which the debtor [Louis Dreyfus] may make to the assignor [Baker] in ignorance of the assignment.").) See also, Chitty § 19-020.

the rights of the assignor once intention to assign is communicated to the assignee. Holt, 2 K.B. at 4-5; Chitty §§ 19-020, 19-021.

Further, with exceptions inapplicable here, when an equitable assignor's interest in a debt is cut off, so is the ability of the assignor's creditors or other persons attempting to claim the debt through him to attach the debt. Holt, 2 K.B. at 6; Chitty §§ 19-057, 19-066 ("[A] creditor cannot . . . attach any debt already assigned by the assignor."). In this case, Egyptian has attached the freight payments as security for a potential future judgment in its favor against Baker. In other words, Egyptian claims the payment as a potential judgment creditor of Baker's. However, because Baker's interest in the freight payments was cut off by the equitable assignment, Egyptian's ability to attach the freight payments was also destroyed.

Because Mr. Horn's analysis is persuasive, the Court holds that even if the March 5, 2008 letter was insufficient notice to create a statutory assignment, Adora, as an equitable assignee of the freight payment, owned the EFT restrained by Citibank. (See Horn Decl. ¶¶ 11, 13-15). Therefore, Egyptian has not carried its burden of showing that the requirements of Rule B have been met.

      3.    *Clerical Error*

Finally, Egyptian's argument that "[Baker's] interest in the [EFT] attached at Citibank is irrefutable since [*Baker*] *was the named beneficiary on the EFT*," (Mem. of Law in Opposition to Mot. to Vacate at 8) (emphasis in original), need not long detain the Court. It is uncontested that Louis Dreyfus directed its bank to route the EFT to a bank account owned by Adora and not by Baker. There is nothing in the record to suggest that the inclusion by Louis Dreyfus of Baker's name in the EFT instructions was anything

11

other than a simple clerical mistake. Indeed, Adora has submitted evidence that Louis Dreyfus attempted to correct the EFT instructions within a day of the transfer, but too late to avoid the interception of Adora's funds by Citibank in New York. Egyptian cites no authority for the proposition that an entity with no interest in an EFT under the terms of a prior assignment to a third party somehow gains such an interest when the party initiating the EFT mistakenly names that entity as the transaction's beneficiary. Under these circumstances, the Court concludes that Egyptian has not met its burden of demonstrating that the EFT belonged to Baker rather than Adora.

### III.  CONCLUSION

For the reasons set forth above, Adora's motion is granted and the restraint by Citibank of $127,755.79 belonging to Adora pursuant to the March 3, 2008 maritime attachment in this action is hereby vacated.


Dated: New York, New York
       April 14, 2008

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.