UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EGYPTIAN NAVIGATION CO.,

                         Plaintiff,

     - against -

BAKER INVESTMENTS CORPORATION and
BAKER INTERNATIONAL GROUP,

                         Defendants.
------------------------------------------------------------------X

**ECF CASE**

08 Civ. 2080 (SHS)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY OF EXECUTION OF ORDER VACATING MARITIME ATTACHMENT

Of Counsel:

Kirk M. Lyons
Michael A. Namikas

**Lyons & Flood, LLP**
Attorneys for Interested Party
ADORA INVESTMENTS INC.
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ................................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    POINT I    EGYPTIAN'S MOTION FOR A STAY PENDING APPEAL SHOULD BE DENIED ............................................................. 2

        a.    Egyptian has not demonstrated a substantial possibility of success on appeal ...................................................... 3

        b.    Egyptian has not proven that it will suffer an irreparable injury if a stay is not granted ........................................ 6

        c.    Non-party Adora will be substantially harmed if the stay is granted ................................................................................ 8

        d.    No public interests will be affected by denial of the stay ................................................................................................ 9

    POINT II    IN THE EVENT A STAY IS GRANTED, EGYPTIAN SHOULD BE REQUIRED TO POST SECURITY FOR ADORA'S LOSSES ................................................................. 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Brenntag Int'l Chem., Inc. v. Bank of India, 175 F.3d 245 (2nd Cir. 1999) .................................. 8

Clarett v. NFL, 306 F. Supp. 2d 411 (S.D.N.Y. 2004) ............................................................. 3, 4

Country Squire Assocs., L.P. v. Rochester Cmty. Sav. Bank, 203 B.R. 182
    (B.A.P. 2nd Cir. 1996) ............................................................................................................ 4

Egyptian Navigation Co. v. Baker Invs. Corp., 2008 U.S. Dist. LEXIS 30804
    (S.D.N.Y. Apr. 14, 2008) ........................................................................................................ 1

Equal Employment Opportunity Comm'n v. Local 638, 1995, U.S. Dist. LEXIS
    7756 (S.D.N.Y. June 7, 1995) ................................................................................................. 7

Ford v. Reynolds, 316 F.3d 351 (2nd Cir. 2003) ........................................................................... 8

Hilton v. Braunskill, 481 U.S. 770 (1987) .................................................................................... 4

Hirschfeld v. Bd. of Elections, 984 F.2d 35 (2nd Cir. 1993) ......................................................... 2

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2nd Cir. 1979) ............................... 8

Malarkey v. Texaco, Inc., 794 F. Supp. 1248 (S.D.N.Y. 1992) .................................................... 4

N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters, 2005 U.S. Dist. LEXIS
    6819 (S.D.N.Y. Apr. 19, 2005) ............................................................................................... 4

Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of
    the Electrical Indus., 2003 U.S. Dist. LEXIS 12497 (E.D.N.Y. June 4, 2003) ...................... 3

Polar Grove Planning & Refiining Co. v. Bache Halsey Stuart, Inc., 600 F.2d
    1189 (5th Cir. 1979) .............................................................................................................. 12

Republic Nat'l Bank of Miami v. United States, 506 U.S. 80 (1993) ........................................... 9

Signet Shipping Co. v. Southern Hardwoods, Inc., 108 F. Supp. 2d 649 (E.D. La.
    2000) .................................................................................................................................. 9, 11

Stevedoring Servs. Of Am. v. Ancora Transp., 59 F.3d 879 (9th Cir. 1995) ................................ 9

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969 (2nd Cir. 1989) ............................... 8

United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d
    1082 (2nd Cir. 1995) ............................................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 62(c) ............................................................................................ 2

**Treatises**

20 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 308.30 (3d ed. 2008) ......................................................................................................................... 12

**PRELIMINARY STATEMENT**

Interested party ADORA INVESTMENTS INC. ("Adora") respectfully submits this Memorandum of Law in opposition to plaintiff's motion for a stay pending appeal of the Opinion and Order entered April 14, 2008, vacating the maritime attachment of certain funds owned by Adora. This Memorandum of Law is submitted together with the Affirmation of Phillipos Gallanis dated May 20, 2008 ("Gallanis Aff."), the Affirmation of Antonis Lemos dated May 22, 2008 ("Lemos Aff."), the Declaration of Emmet Paul Coldrick dated May 22, 2008 ("Coldrick Decl."), and the Exhibits attached thereto, to which the Court is respectfully referred.

**FACTS**

Plaintiff, EGYPTIAN NAVIGATION CO. ("Egyptian"), commenced this action on March 3, 2008, claiming damages against defendants, BAKER INVESTMENTS CORPORATION and BAKER INTERNATIONAL GROUP (collectively "BIC"), based on BIC's March 1, 2006, time charter of the M/V DOMIAT from Egyptian. On March 5, 2008, Egyptian attached an electronic funds transfer ("EFT") in the amount of $127,755.79, being routed through Citibank for the benefit of Adora.

Adora moved to vacate the attachment pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and on April 14, 2008, this Court issued a decision vacating the attachment, on the grounds that BIC had no interest in the EFT under English law because it had previously assigned all of its rights to payment to Adora, either as a statutory assignment or under the doctrine of equitable assignment. Egyptian Navigation Co. v. Baker Invs. Corp., 2008 U.S. Dist. LEXIS 30804, at *13-14, 17 (S.D.N.Y. Apr. 14, 2008).

Egyptian subsequently filed a Notice of Appeal of the April 14, 2008, Opinion and Order ("Vacatur Order"), and has now moved for a stay of the Vacatur Order pending appeal, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. For the reasons stated below, Adora respectfully submits that Egyptian has failed to meet its burden under Rule 62(c), and, therefore, Egyptian's motion for a stay pending appeal should be denied in its entirety.

## ARGUMENT

## POINT I

### EGYPTIAN'S MOTION FOR A STAY PENDING APPEAL SHOULD BE DENIED

Rule 62(c) provides the Court with discretion to "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." FRCivP 62(c).

It is well-settled that in determining whether a stay pending appeal should be granted, courts should consider: (1) whether the movant has demonstrated a substantial possibility of success on appeal; (2) the risk of irreparable harm to the movant absent a stay; (3) the lack of substantial harm to the non-movant if the stay is granted; and (4) the public interests that may be affected. See Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2nd Cir. 1993) (citations omitted).

It is also well-settled that the party seeking a stay pending appeal "bears a difficult burden." See, e.g., United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2nd Cir. 1995); Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Indus., 2003 U.S. Dist. LEXIS 12497, at *3 (E.D.N.Y. June 4, 2003) (denying stay because movant "ha[d] not satisfied the high burden placed on them"). For the reasons discussed below, Egyptian has not met its burden.

      **a.    Egyptian has not demonstrated a substantial <u>possibility of success on appeal</u>**

In what appears to be an attempt to disguise the weakness of its showing on this factor, Egyptian suggests at the outset that the likelihood of success on appeal "is not a rigid concept" and argues that a stay is appropriate even in the absence of a probability of success, on the strength of the remaining factors. (See Egyptian's Memo. at pp. 3-4)

Adora concedes that the likelihood of success on appeal factor is not outcome determinative in and of itself; after all, it would be unnecessary to have four factors if only one of them counted. See <u>Clarett v. NFL</u>, 306 F. Supp. 2d 411, 413 (S.D.N.Y. 2004) (stating that "no single factor is determinative"). However, although the substantial possibility of success on appeal is not the only factor for the Court to consider, it is one of the most important. See <u>Malarkey v. Texaco, Inc.</u>, 794 F. Supp. 1248, 1250 (S.D.N.Y. 1992) (denying stay where movant had "not made the required 'strong showing that [it] is likely to succeed on the merits'") (citing <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)); <u>Country Squire Assocs., L.P. v. Rochester Cmty. Sav. Bank</u>, 203 B.R. 182, 184 (B.A.P. 2nd Cir. 1996) (holding that the movant must show "more than a mere possibility of a successful appeal").

Moreover, courts have held that "where the party opposing a stay will suffer irreparable harm, the movant must make a *particularly* strong showing of its likely success on appeal." <u>Clarett</u>, <u>supra</u>, 306 F. Supp. 2d at 413 (emphasis in original); <u>see</u> <u>also</u> <u>N. Am. Airlines, Inc. v. Int'l Brotherhood of Teamsters</u>, 2005 U.S. Dist. LEXIS 6819, at *5 (S.D.N.Y. Apr. 19, 2005) (holding that where the irreparable harm alleged by the movant is minimal, "the probability of success [on appeal] must be high.") As discussed below, Adora will suffer substantial harm if a stay pending appeal is granted and the irreparable harm alleged by Egyptian is minimal. Thus, Egyptian must make a particularly strong showing of its likely success on appeal.

-3-

Egyptian's sole basis for claiming a substantial possibility of success on appeal is its submission of a Declaration by Mark Wingate Jones, analyzing the effectiveness of the deed of assignment under English law.[1] In his Declaration, Mr. Jones has taken the position that the "whether the purported assignment qualified as a 'statutory assignment'" under English Law, was irrelevant, and that the real issue is whether the deed of assignment was instead actually an agreement to assign. (See Jones Decl. at ¶ 7). According to Mr. Jones, the deed of assignment was a mere agreement to assign, because the property and/or rights it purported to assign did not yet exist at the time the deed of assignment was entered into between BIC and Adora. (Id.) Mr. Jones further explains, that in order for such agreements to assign to be enforceable, consideration must have been provided to BIC by Adora. (Id.) Mr. Jones then incorrectly posits, Adora submits, that no consideration was exchanged and therefore ultimately concludes that Egyptian has a substantial possibility of success on appeal because Adora had no legal interest in the attached funds.

These tenuous conclusions drawn by Mr. Jones are roundly rebutted by the Declaration of Emmet Paul Coldrick, Adora's English barrister. At the outset, Mr. Coldrick explains that the issue of effectiveness of the assignment is irrelevant, since the funds under attachment were being transferred for the benefit of Adora. (Coldrick Decl. at ¶¶ 9-12 and 46). However, Mr. Coldrick further explains, that even if the effectiveness of the assignment is at issue, it is clear that contrary to Mr. Jones's assertion, at least a part of the deed of assignment (clause 1(a) which is the portion at issue in this case), was "an actual assignment of the <u>existing</u> contractual right, under the Louis Dreyfus sub-charterparty, to such freight as falls due on performance of the agreement." (Coldrick Decl. at ¶ 21). Mr. Coldrick further opined "given the broad wording

---

[1] It is interesting to note that Egyptian has abandoned its earlier evidence on English law from solicitor Laurence

-4-

used in the deed – *'property, rights, claims and liberties'* – it seems to me that it would flout business common sense to read clause 1(a) as failing to assign any existing contractual right to freight." (Id.)

Alternatively, Mr. Coldrick opined that, even if the deed of assignment were found to have been an agreement to assign rather than an actual assignment, such a finding would not alter the outcome, since there was ample consideration to support the agreement. As Mr. Coldrick noted, the statement in the deed of assignment itself is "some positive evidence that valid consideration was provided." (Coldrick Decl. at ¶ 40). Further, Mr. Coldrick explained that under English law, "the law, if it possibly can, will infer forbearance to sue where the assignment has been made to an existing creditor." (Coldrick Decl. at ¶ 41). Mr. Coldrick also observed that a "*promise* to forebear from suing for the debt is unnecessary, actual forbearance … being sufficient," and noted that Adora's Director, Mr. Gallanis, stated in his supplemental Affirmation that Adora threatened suit but, in light of the deed of assignment, did not sue. (Coldrick Decl. at ¶¶ 43-45). On the basis of these facts, Mr. Coldrick concluded that there was consideration for the agreement to assign under English law, and that such an agreement would be upheld by English courts.

Thus, Egyptian's new attack on the validity of the assignment has no more merit than its original claim that the assignment was ineffective for lack of notice to Louis Dreyfus. In any event, it is clear that Egyptian has not demonstrated a substantial possibility of success on appeal. Therefore, Adora respectfully submits that Egyptian's motion for a stay pending appeal should be denied.

---

Marron. Apparently, Egyptian hopes that a "second bite at the apple" will succeed where the first did not.

### b. **Egyptian has not proven that it will suffer an <u>irreparable injury if a stay is not granted</u>**

Egyptian argues that it would be irreparably injured absent a stay, claiming that BIC has "no known assets and a questionable credit history." (See Egyptian's Memo. at p. 5). At the outset, it should be noted that Adora is not a party to any dispute between Egyptian and BIC, and Adora is thus, wholly unconcerned with whether Egyptian is ultimately able to obtain satisfaction of any judgment it might obtain against BIC. However, since Egyptian has wrongly asserted that the funds under attachment are the property of BIC, Adora is compelled to address Egyptian's accusations.

Egyptian provides no support whatsoever for its claim that BIC has no assets, and moreover, appears to have overlooked the fact that BIC clearly has assets as evidenced by the freight income it was due to receive from the charter of the M/V DJEBEL REFAA. Egyptian's suggestion that BIC has a questionable credit history is similarly unfounded, since it ignores the fact that BIC had arranged to repay its loan to Adora, and indeed such loan would have been repaid but for Egyptian's attachment of the funds.

Egyptian's entire claim of irreparable injury is thus based upon pure conjecture and such speculation should not be given any weight by the Court in deciding whether Egyptian has shown irreparable harm. See <u>Equal Employment Opportunity Comm'n v. Local 638</u>, 1995, U.S. Dist. LEXIS 7756, at *2 (S.D.N.Y. June 7, 1995) (holding that "[t]o establish irreparable harm, [plaintiff] must demonstrate an injury that is neither remote nor speculative, but actual and imminent") (internal citations omitted).

Moreover, the type of monetary injury Egyptian claims it will suffer if a stay is not granted is not the type of "irreparable injury" it is required to prove in order to prevail on the motion for stay. <u>See</u>, <u>e.g.</u>, <u>Brenntag Int'l Chem., Inc. v. Bank of India</u>, 175 F.3d 245, 249 (2nd

-6-

Cir. 1999) ("As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm.") (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2nd Cir. 1979); see also Ford v. Reynolds, 316 F.3d 351, 355 (2nd Cir. 2003) ("To establish irreparable harm, the injury alleged must be one requiring a remedy of more than mere money damages") (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2nd Cir. 1989).

Additionally, it must be reiterated that Adora is not a party to this lawsuit. It would be inequitable to continue to hold its property merely because Egyptian may find it difficult to collect a judgment from a defendant unrelated to Adora.

Furthermore, as acknowledged by Egyptian, the continuous control of the *res* is no longer required to maintain jurisdiction over an *in rem* action. See Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 88 (1993) (holding that "the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the *res* from the district") (emphasis in original); see also Stevedoring Servs. Of Am. v. Ancora Transp., 59 F.3d 879 (9th Cir. 1995) (extending Republic Nat'l Bank to the province of Rule B attachments). Thus, in the unlikely event that Egyptian's doomsday scenario comes to fruition, BIC would remain subject to the jurisdiction of the Court in spite of a transfer of all of its assets outside the district. Following this Court's denial of a stay, "[plaintiff's] position would be no worse than that of any other plaintiff in a civil action." See Signet Shipping Co. v. Southern Hardwoods, Inc., 108 F. Supp. 2d 649, 650 (E.D. La. 2000).

In sum, Egyptian's speculation that BIC is bordering on insolvency or is planning to remove its assets from this District is insufficient to show that it would suffer irreparable injury. This is especially true in light of the fact that BIC would remain subject to this Court's

jurisdiction. Moreover, it would be unfair to punish Adora, an innocent non-party, for BIC's future actions or present inadequacies. Therefore, Egyptian has failed to meet its burden of proving that it will suffer an irreparable injury and its motion to stay the Vacatur Order should be denied.

      c.    **Non-party Adora will be substantially <u>harmed if the stay is granted</u>**

Adora is a non-party with an insubstantial, but unfortunate, connection to Egyptian's cause of action. But for Louis Dreyfus' clerical error, Adora would not have had its property restrained. Although Adora's connection to this case is negligible, the injury it will suffer as a result of a stay is not. It is undeniable that having $127,755.79 under continued restraint while Egyptian's appeal is under consideration is a substantial injury. This is especially true because Adora is a non-party whose funds should not have been attached in the first place.

Oddly, Egyptian argues that Adora will not be harmed by a stay because under the deed of assignment, Adora would "receive all future freight payments from the vessel 'until the Debt has been repaid in full.'" (See Egyptian's Memo. at p. 6). This argument is a direct contradiction of Egyptian's premise that the deed of assignment was ineffective and that any agreement to make an assignment was void due to a lack of consideration. If the deed of assignment has no legal effect, as urged by Egyptian, then surely BIC would not continue to direct payments under it. Moreover, if Egyptian's assertion that BIC is a failing company on the verge of insolvency is to be believed, BIC could hardly continue operating its vessels and therefore be able to pay Adora. Egyptian's conflicted reasoning underscores the weakness of its argument in favor of a stay.

In any event, it is clear that Adora has already suffered harm as a result of the attachment and will continue to suffer substantial harm in the future if a stay is granted. In his supplemental

-8-

Affirmation, Adora's Director, Mr. Gallanis, stated that Adora was losing approximately $2,661.58 per month in investment income due to the continued restraint of its property. (See Gallanis Aff. at ¶ 4). Such losses, combined with the continued restraint of a significant sum of Adora's property and the incursion of the costs of this action and on appeal, constitute a substantial injury. Therefore, Adora respectfully submits that it would be substantially harmed if Egyptian is granted a stay pending appeal and therefore, Egyptian's motion for a stay should be denied.

        d.      **No public interests will be affected by denial of the stay**

Egyptian's brief discussion of the final factor under Rule 62(c) argues that a stay would "serve the public interest by maintaining the status quo during appeal … and ensuring that ultimate liability judgments issued by this Court are enforceable and not simply hollow, useless rights." (See Egyptian's Memo. at p. 7). As discussed above, the refusal to grant a stay in this instance would not render liability judgments issued by this Court hollow and useless. To the contrary, in the unlikely event that the Second Circuit determined that the funds under attachment were the property of BIC rather than Adora, even if the funds had been released in the interim, this Court would retain jurisdiction over the *res* and Egyptian's "position would be no worse than that of any other plaintiff in a civil action." Signet Shipping Co., supra, 108 F. Supp. 2d at 650.

Moreover, this litigation involves a private commercial dispute between two foreign entities. It is difficult to imagine how such a suit implicates the public interests of the United States. Since Egyptian has not implicated public interests in any meaningful way, Adora respectfully submits that this factor weighs in favor of dismissal of Egyptian's motion for a stay pending appeal.

-9-

# POINT II

## IN THE EVENT A STAY IS GRANTED, EGYPTIAN SHOULD BE REQUIRED TO POST SECURITY FOR ADORA'S LOSSES

Alternatively, in the event that Egyptian is granted a stay pending appeal, Adora respectfully submits that Egyptian should be required to provide a *supersedeas* bond covering Adora's losses and its costs in this action and costs on appeal.

In the event the Court grants Egyptian's motion for a stay, Egyptian should be required to post a *supersedeas* bond in the amount of $63,877.92, representing approximately two years of Adora expected losses, and its costs on appeal.

Under Rule 62(c), a movant is required to post a bond in order to obtain a stay. It is hornbook law that "if a court departs from the requirement of a full-security *supersedeas* bond, the burden should be on the moving party to demonstrate the reasons warranting such a departure." 20 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 308.30 (3d ed. 2008); see also Polar Grove Planning & Refiining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189 (5th Cir. 1979) (holding that amount of bond must include whole amount of judgment remaining unsatisfied, costs on appeal, interest, and damages for delay, unless the court after a notice and a hearing and for good cause shown, fixes a different amount or orders security other than bond).

Here, Egyptian has not met this burden, and indeed has not even attempted to meet this burden. Egyptian admits in its papers that Adora will be damaged by the continued attachment of the funds, at the very least by being forced to incur the costs of this action and the costs on appeal. (See Egyptian's Memo. at pp. 6-7). Despite this admission, Egyptian requests – without the submission of any facts or even citation to any authority supporting its request – that the *supersedeas* bond requirement be waived. (See Egyptian's Memo. at p. 7).

Should the court grant Egyptian's motion for a stay pending appeal, which for the foregoing reasons, Adora maintains it should not, Adora is entitled to a *supersedeas* bond that ensures it is secured for any and all costs and damages it stands to potentially recover in the event Egyptian's appeal is denied. An appropriate figure in this regard would be $63,877.92.

## **CONCLUSION**

For the reasons set forth herein, there is no valid reason to stay execution of the Vacatur Order pending appeal. Egyptian has not demonstrated circumstances that would warrant a stay pending appeal. Accordingly, Adora respectfully submits that this Court should deny Egyptian's motion for a stay pending appeal or, in the alternative, direct Egyptian to post a *supersedeas* bond in the sum of $63,877.92 in the event Egyptian's motion is granted.

Dated: May 22, 2008

                                LYONS & FLOOD, LLP
                                Attorneys for Interested Party
                                ADORA INVESTMENTS INC.

By: *[signature]*
                                Kirk M. Lyons (KL-1568)
                                65 West 36th Street, 7th Floor
                                New York, New York 10018
                                (212) 594-2400

U:\kmhldocs\2651002\Motions\Stay\MOL-OppStay.doc

## CERTIFICATE OF SERVICE

Jon Werner, an attorney duly admitted to practice before this Honorable Court, affirms on this 22nd day of May 2008, I served true copies of the foregoing, by e-mail and ECF notice to:

LAW OFFICES OF RAHUL WANCHOO
Attorneys for Plaintiff
350 Fifth Avenue, 59th Floor
New York, NY 10118

Attn:  Rahul Wanchoo, Esq.
rwanchoo@wanchoolaw.com

_____
Jon Werner

U:\kmhldocs\2651002\Motions\Stay\MOL-OppStay.doc